UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CR17-82 RHK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **INFORMATION** |
| Plaintiff, | ) |
| | ) 18 U.S.C. § 1832(a)(1) |
| v. | ) |
| CHRISTOPHER BARRY, | ) |
| Defendant. | ) |

THE UNITED STATES ATTORNEY CHARGES:

## INTRODUCTION

At times relevant to this Information:

1. Defendant Christopher BARRY was a resident of the State of Minnesota.

2. Victim Company A developed, manufactured, and sold medical products. Victim Company A was based in New Hope, Minnesota, and also had a manufacturing facility located in New York.

3. Beginning in about 2007 and continuing until on or about May 1, 2015, defendant Christopher BARRY was employed at Victim Company A as the Vice President of Research & Development.

### Trade Secrets

4. Victim Company A's primary product was a proprietary angioplasty drug coated balloon ("DCB 1"). This technology was extremely valuable. Most of Victim Company A's sales in 2015, which totaled more than $50 million, were derived from DCB

SCANNED
APR - 6 2017
U.S. DISTRICT COURT MPLS

U.S. v. Christopher Barry

1. Victim Company A spent approximately seven years bringing this product to market, a process that involved a lengthy research and development phase, multiple clinical studies, extensive testing, and significant time refining a manufacturing and quality assurance process.

5. There were multiple aspects of the process used by Victim Company A to create, test, and manufacture DCB 1 that were proprietary and not generally known to the public. The following files (among others) that were stored on Victim Company A's computer systems contained proprietary information related to DCB 1 and constituted trade secrets within the meaning of 18 U.S.C. § 1832:

    a. ***File 1 – Design Input Requirements.*** A blueprint-type document for Victim Company A's design of a new version of the DCB 1 which outlines various design requirements such as what sizes of the balloon might be manufactured; how much drug should coat each balloon; descriptions of claims that Victim Company A hopes to make about the product and its uses; and test methods.

    b. ***File 2 – Design Input Summary.*** A document discussing all of the design inputs outlined in File 1 but in greater, and more technical, detail. This document serves as a blueprint of product specifications while also providing details about what the customer wants to see in the product and why.

U.S. v. Christopher Barry

    c.    ***File 3 – Coating Solution Preparation.*** Work instructions for operators that show the manufacturing steps for how to prepare the proprietary coating solution, including mixing details such as the order that ingredients are added, for DCB 1.

    d.    ***File 4 – Coating Solution Formula.*** The formula Victim Company A uses to create its proprietary coating solution, including the weights of each ingredient for the volume of solution being created, which along with File 3 provides a complete set of instructions for preparing the drug coating solution for DCB 1.

    e.    ***File 5 – Evaluation of the Dissolution Methods.*** A document that describes the performance of possible manufacturing failures specific to the Victim Company A formulation and references the name of a specific confidential ingredient for the DCB 1.

    f.    ***File 6 – Paclitaxel Polymorphic Form Study with a Dissolution Method.*** Study performed by Victim Company A to establish uniformity in the manufacturing processes for DCB 1.

6.    Victim Company A implemented multiple measures to protect and maintain the confidentiality of its trade secrets, including: requiring all employees to sign confidentiality and non-disclosure agreements; implementing policies identifying company confidential information; prohibiting employee disclosure of trade secrets; restricting access to office workspaces; and establishing safeguards against electronic and other disclosures of trade secrets.

U.S. v. Christopher Barry

## Christopher Barry's Employment at Victim Company A

7. Defendant was employed by Victim Company A as the Vice President of Research & Development. In this role, BARRY was responsible for all research and development, quality assurance, and manufacturing activities for the company. BARRY worked with the Chief Technology Officer in the design, formulation, and establishment of a "Quality System"—designed to ensure compliance with all regulatory guidelines and policies—for the company; worked with key component suppliers to establish long term supply contracts; hired a team to bring products to commercialization; and helped to establish a manufacturing structure to support R&D activities and future scale up for commercialization. BARRY was directly involved in the development of the confidential process for the drug coating on DCB 1, and also in Victim Company A's preliminary medical testing of the DCB for other purposes, including urological applications.

## Defendant's Theft of Trade Secrets

8. No later than in or about April 2015, BARRY decided to leave his employment with Victim Company A. As BARRY was planning to leave, he—without seeking or obtaining authorization from Victim Company A—took numerous trade secret files belonging to Victim Company A so that he could utilize those files in connection with his next job.

9. For example, on April 15, 2015, between 3:26 p.m. and 4:35 p.m., BARRY downloaded approximately 25 documents—including **File 5** and **File 6**, among other files

U.S. v. Christopher Barry

containing trade secrets—from Victim Company A's electronic document management system, and saved them to his work computer. Later that same day, between 9:08 p.m. and 9:52 p.m., while at home, BARRY downloaded at least 48 documents—including **File 1, File 2, File 3, and File 4**, among other files containing trade secrets—from Victim Company A's document management system, and saved them to his work computer. BARRY later transferred these trade secret files to a USB Device and then to a personal portable hard drive. BARRY intended to and did take these trade secret files in order to use and reference them in his next job. That same evening, at approximately 10:00 p.m., BARRY drafted his letter of resignation to Victim Company A.

10. On April 16, 2015, BARRY tendered his resignation to Victim Company A. On May 15, 2015, BARRY accepted the position of CEO at Company B. Company B was a medical product start up that intended to develop and sell a drug coated balloon for urological applications. During his employment with Company B, BARRY transferred files—including numerous trade secret files belonging to Victim Company A—from his portable hard drive onto his new work computer.

## COUNT 1
(Theft of Trade Secrets)
18 U.S.C. § 1832(a)(1)

11. The allegations contained in paragraphs 1 through 10 of this Information are re-alleged as if stated in full herein.

U.S. v. Christopher Barry

12. On or about April 15, 2015, in the State and District of Minnesota, the defendant,

**CHRISTOPHER BARRY,**

did knowingly and willfully steal, and without authorization appropriate, take, carry away, and conceal trade secrets belonging to Victim Company A that were related to a product or service used in or intended for use in interstate or foreign commerce, namely File 1, File 2, File 3, File 4, File 5, and File 6, among other trade secrets, intending to convert the trade secrets to the economic benefit of someone other than Victim Company A, and intending and knowing that the offense would injure Victim Company A;

All in violation of Title 18, United States Code, Section 1832(a)(1).

## FORFEITURE ALLEGATIONS

13. Count 1 of this Information is hereby realleged and incorporated as if fully set forth herein by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 2323.

14. As the result of the offenses alleged in Count 1 of this Information, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 2323(b)(1), any property used, or intended to be used, in any manner or part to commit or facilitate the commission of the offense, and any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of the offense.

U.S. v. Christopher Barry

15. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2323(b)(2)(A).

Dated: April 5, 2017

GREGORY G. BROOKER
Acting United States Attorney

BY: BENJAMIN F. LANGNER
Assistant U.S. Attorney
Attorney ID No. IL-6277851